### GOODSPEED *v.* SMITH.

1. BROKERS—TROVER AND CONVERSION—STOCK GAMBLING TRANSACTIONS—BUCKET SHOPS.

    The making of a contract by plaintiff with defendant for the purchase, as broker, of stock on margins, and its consequent breach, not being denied, the alleged intention of the parties to carry out a gambling transaction, prohibited by Act No. 336, Pub. Acts 1907, as claimed by defendant and as denied by plaintiff, was a question for the jury.

2. SAME—CONVERSION OF STOCK—TRANSACTIONS ON MARGIN.

    No conversion could take place where an actual purchase of stock was not contemplated or executed by the broker.

3. SAME—CONTRACTS—ILLEGALITY.

    The fact that the broker knowingly engaged in a business prohibited by law and made contracts in violation of the

statute, would not defeat the plaintiff's right to damages, if he acted in good faith, and the defendant failed to perform the agreement.

4. SAME.

The provisions of Act No. 336, Pub. Acts 1907, being merely penal, would not prevent plaintiff's recovery.

5. TROVER AND CONVERSION—DAMAGES—INCORRECT THEORY.

The submission to the jury of the question of a conversion of stock by a broker who never, in fact, bought the stock, was not prejudicial error, where the jury determined in plaintiff's favor by their verdict all the facts necessary to a recovery for breach of contract, and where the measure of damages was the same under either theory.

Error to the superior court of Grand Rapids; Stuart, J. Submitted June 14, 1910. (Docket No. 61.) Decided September 27, 1910.

Trover by Richard C. Goodspeed against Connor H. Smith. A judgment for plaintiff is reviewed by defendant on writ of error. Affirmed.

*Dunham & Phelps*, for appellant.

*Richard C. Goodspeed* (*Fred P. Geib*, of counsel), *in pro. per.*

BROOKE, J. During the year 1907 and a part of 1908, defendant maintained a stockbroker's office in the city of Grand Rapids. He was not a member of any stock exchange, but wired all orders to Stapely & Co. of Cincinnati. That concern failed on May 9, 1908, and defendant ceased doing business on the same day. The plaintiff, a young lawyer, working for a salary of $75 per month and having practically no other resources, had certain dealings with defendant as follows: October 22, 1907, bought 10 shares of American Car & Foundry at $27\frac{1}{2}$, upon a margin of 5 points per share, or $50. December 12, 1907, bought 10 shares American Locomotive at $35\frac{1}{4}$. March 24, 1908, sold same at $42\frac{1}{4}$, making a profit of $70. January 27, 1908, he ordered from defendant 10 shares Missouri Pa-

cific at 42¼, upon a margin of 10 points, paying thereon $100. February 17, 1908, this stock having receded in value, he paid $50 additional thereon. May 7, 1908, he ordered from defendant 10 shares Western Union Telegraph at 51¾, upon a margin of 10 points, paying nothing upon the purchase. As to each of the last two deals, plaintiff was notified in writing by defendant that the stocks so ordered had been purchased for plaintiff's account. On May 9, 1908, defendant's principal having failed, he closed his business; no settlement having been made with plaintiff on the last two purchases. On May 23, 1908, plaintiff wrote to defendant that he desired to pay the balance due upon the two lots of stock and receive the same. On August 29, 1908, another letter to the same effect was written. Defendant paid no attention to either letter. On January 21, 1909, plaintiff tendered to defendant the sum of $840, being the amount due thereon with interest at 5 per cent. from the date of the purchase, and demanded delivery of the stock. In the meantime, both issues had increased largely in value, so that upon the day the tender was made the market value of the 20 shares was about $563 in excess of the amount of the tender. Settlement having been refused by defendant, plaintiff brought suit and recovered a judgment for the above amount, with interest to the date of trial. The first count in the declaration is in trover for the unlawful conversion of the 20 shares of stock. The second and third counts set out the contracts, aver breach thereof, and consequent damage.

It is conceded by plaintiff that in the first and second transactions no stock was ever delivered to him, nor did he have it to deliver when he ordered it sold. Settlement was made upon the market quotations without actual delivery. He testifies, however, that as to all four transactions, it was his intention to actually buy, and, as he was able, to pay for the various stocks in which he dealt. So far as the defendant is concerned, it is clear that neither he nor his principal ever contemplated the actual execu-

tion of the orders in question. He was operating what is commonly known as a "bucket shop." He dealt in about 60,000 shares during the time he was in business, making actual deliveries of but 250 shares of stock within that period, and such deliveries were made only after the purchase price was paid in full.

Act No. 336, Pub. Acts 1907, absolutely prohibits the operation of such a business as defendant was engaged in and makes such operation a crime punishable by fine and imprisonment. By this act the offense is made complete where—

"Both parties *or such keeper or proprietor shall contemplate or intend* that such contracts, * * * shall be or may be deemed closed or terminated * * * when the market quotations reach a certain figure, * * * wherein the parties thereto do not contemplate the actual or bona fide receipt or delivery of such property, but do contemplate a settlement thereof based upon differences in the price at which said property is or is claimed to be bought and sold."

The making of the contracts in question, their breach by defendant, and consequent loss to plaintiff, is not denied by defendant. He contends, however, that the contracts were of a gambling character, plaintiff so understanding them, and therefore not enforceable. It is clear from his own testimony that he intended them to be such. Did plaintiff so regard them? Taking into consideration his limited means, his profession, and his knowledge of affairs, it is difficult to believe that he understood the transactions in any different light than did the defendant. This issue was, however, submitted to the jury under proper instructions, and it was determined in plaintiff's favor. Upon a full consideration of the matter, we have decided that that determination should not be disturbed.

The court submitted the case to the jury upon the theory that there had been an unlawful conversion, by the defendant, of 20 shares of stock belonging to plaintiff. We think the record clearly shows that there could have been no such conversion, for the reason that neither plaintiff

nor defendant ever had possession of the stock in question. Defendant, however, as before stated, notified plaintiff in writing that he had bought the stocks for plaintiff's account in both instances, and upon the notices so sent appeared the following language:

"The actual delivery of property is in all cases contemplated and understood."

These representations as to purchase were false; but, assuming the good faith of plaintiff, defendant cannot be heard to say that, because he misled plaintiff as to the facts, plaintiff must therefore go remediless. The statute above referred to is purely penal in character and has no bearing upon the question here involved. The fact that defendant knowingly engaged in a business prohibited by law, and made contracts in violation of the statute, cannot affect the right of the plaintiff, if he acted in good faith in the transaction, to demand damages growing out of defendant's failure to perform as he had agreed.

Upon the question of damages, the court charged the jury as follows:

" If you find that there was an unlawful conversion of any of these stocks by the defendant, then you should give the plaintiff as damages the value of the stock at the time of such conversion, less what the plaintiff owed defendant at that time, with interest from the time of the conversion to the present, at 5 per cent."

Had the case been submitted to the jury upon the proper theory, i. e., a broken contract and consequent damage, the measure would have been the same as was given by the court upon the conversion theory. As, in order to reach the verdict they did, the jury determined all facts necessary to plaintiff's recovery in his favor, we conclude that the error pointed out in the charge was without prejudice.

The other assignments of error have been examined, but disclose no reversible error.

The judgment is affirmed.

OSTRANDER, HOOKER, MOORE, and McALVAY, JJ., concurred.